IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ALICIA HEAD,<br><br>    *Plaintiff*,<br><br>v.<br><br>DAVID STEINER, *Postmaster General of the United States*,<br><br>    *Defendant*. | CIVIL ACTION NO.<br>5:25-cv-00108-TES |

**ORDER LIFTING STAY AND GRANTING DEFENDANT'S MOTION TO DISMISS**

This lawsuit involves a party represented by the Department of Justice, which, as of midnight on October 1, 2025, experienced a lapse in funding due to the Congressional impasse on approving an appropriation bill or continuing resolution to fund the Department of Justice and other Executive agencies for the upcoming fiscal year. *See* [Doc. 19, p. 1]. This lapse led to the Chief Judge for the Middle District of Georgia staying all civil proceedings involving attorneys from the Department of Justice on October 6, 2025. [*Id.* (quoting 31 U.S.C. § 1342)]. However, with respect to the motion before the Court, the parties in this case completed briefing on October 1, 2025. *See, e.g.*, [Doc. 8], [Doc. 11]; [Doc. 18]. With briefing fully complete and there being no reason to delay resolution, the Court **LIFTS** the **STAY** imposed on this case by the Administrative Order Staying Civil Proceedings in Light of Lapse of Appropriations [Doc. 19].

In this case, Plaintiff Alicia Head sued the Postmaster General of the United States "on the grounds of [d]isparate [t]reatment." [Doc. 1, p. 2]. Having been served with her Complaint [Doc. 1], *see generally* [Doc. 7], the Postmaster General now seeks dismissal of her disparate treatment claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively, for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. [Doc. 8, p. 1]. Upon review of the allegations Plaintiff makes in her Complaint and the arguments set forth in the parties' briefs, the Postmaster General's Motion to Dismiss [Doc. 8] is due to be **GRANTED**.

## BACKGROUND

The facts of this case are simple, and unless otherwise noted, they are taken from Plaintiff's Complaint and are assumed to be true for the purposes of ruling on the Postmaster General's Motion to Dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). Let's start with where Plaintiff works and what she does.

For the past several years, Plaintiff has worked at the Post Office in Jackson, Georgia, performing "204B duties" and serving as "the T7." [Doc. 1, pp. 2–3, 7]. Beyond stating the "types" of her positions, Plaintiff doesn't elaborate any further on the specifics of what "204B duties" are or what "T7" service entails. Not that the specifics of these two positions are material to the underlying bases for Plaintiff's claim against the Postmaster General, but some minimal insight as to what they entail is contextually helpful. Now, getting that context on paper—in light of the arguments raised by the

Postmaster General *because* the motion before the Court is a *motion to dismiss*—is a little tricky. [Doc. 18, pp. 2–3]. That said, the Court temporarily pauses its discussion of Plaintiff's job duties to explain why it uses documents outside of her Complaint even though the motion before it is a motion to dismiss.

In his Reply [Doc. 18], the Postmaster General takes issue with the fact that Plaintiff impermissibly submitted various documents alongside her Response [Doc. 11] to "bolster" her claim. [*Id.* at p. 2]. First, the Postmaster General argues that the Court cannot consider arguments raised for the first time in response to a motion to dismiss. [*Id.* (citing *Rust v. Boswell*, No. 1:11-CV-3404-JEC-JFK, 2012 WL 12873027, at *2 n.3 (N.D. Ga. June 20, 2012), *report and recommendation adopted*, No. 1:11-CV-3404-JEC-JFK, 2012 WL 12874582 (N.D. Ga. July 11, 2012))]. Second, he argues that Plaintiff's Response "is not the proper avenue to insert new facts into the case to avoid dismissal." [*Id.* at p. 3]. The Postmaster General isn't wrong to raise these red flags, but there's no reason the Court can't use what Plaintiff submitted with her Response to simply explain her job duties.

Rest assured, the Court, in no way, used what Plaintiff submitted with her Response to test the sufficiency of her claim, it only used the contents of those attachments to provide a little insight into her job. "Any facts alleged . . . by Plaintiff for the first time in [or along with her] [R]esponse . . . [were] not . . . addressed [or considered] by the [C]ourt" when it comes to whether she stated a claim against the

3

Postmaster General. *Rust*, 2012 WL 12873027, at *2 n.3. Put simply, the Court only looked to the "four corners" of Plaintiff's Complaint when evaluating whether she stated a claim upon which relief can be granted. [Doc. 18, p. 3 (quoting *Clark v. Ocwen Loan Servicing, LLC*, No. 1:17-cv-03027-TCB-AJB, 2018 WL 1804349, at *3 n.6 (N.D. Ga. Jan. 18, 2018))]; *see also Keating v. City of Mia.*, 598 F.3d 753, 762 (11th Cir. 2010) (stating that a court's review of a complaint on a motion to dismiss is "limit[ed] to the four corners of the complaint").

Further, to the Postmaster General's second argument, Plaintiff cannot amend her Complaint *through* documents submitted with her Response. [Doc. 18, p. 3 (quoting *Wolf v. Alutiiq Educ. & Training, LLC*, No. 2:19-cv-41-WC, 2020 WL 232795, at *3 (M.D. Ala. Jan. 14, 2020) ("A party cannot amend a complaint by attaching documents to a response to a motion to dismiss, or by asserting new facts or theories in the response."))]. Again, rest assured, the Court didn't use or view those documents in any way to amend the substance of Plaintiff's allegations from her Complaint.

Now, to be candid, Plaintiff did try to amend her Complaint after receiving and reviewing the Postmaster General's dismissal arguments. *See generally* [Doc. 14]. The Court, however, denied her Motion to Amend [Doc. 14] without prejudice because she "provide[d] no context for how she would amend her Complaint." [Doc. 16, p. 3]. Courts are authorized to deny leave to amend when plaintiffs do not "set out new factual allegations . . . that, if added to [a] complaint, would" be sufficient to state a

claim. *Posner v. Essex Ins. Co., Ltd.*, 178 F. 3d 1209, 1222 (11th Cir. 1999). Plaintiff provided no substance for how she would amend her Complaint. *See United States ex rel 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1363 (11th Cir. 2023) (quoting *United States ex rel Atkins v. McInteer*, 470 F.3d 1350, 1361–62 (11th Cir. 2006)). Putting all of that legal minutia to the side, what the Court took from the documents Plaintiff filed with her Response are, in a way, central to her claim, and from the contents of the Postmaster General's Reply, appear to be undisputed when it comes to "what" those documents purport to say when it comes to job duties. *See Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

With that handled, the Court continues: What are Plaintiff's job duties? It appears that the 204B position allows a postal employee to take on an "acting supervisor" or "supervisor in training" role on a temporary basis. *See Godfrey v. Brennan*, No. 4:18cv289–WS/CAS, 2020 WL 13669022, at *3 (N.D. Fla. Jan. 3, 2020) ("Unlike customer service supervisors, who are designated to a particular postal station, 204[B] supervisors are sent from station to station to train and to help out where needed."). As for the T7 position, Plaintiff, in one of the attachments to her Response, describes it as a "Lead Sales & Services Associate" position. [Doc. 11-2, p. 5]. A postal employee serving as a T7 "[p]erforms a variety of sales and customer support services" "with or without supervision" for products like stamps, stamped paper, postal cards, philatelic products (for stamp collecting), and special promotional items. [*Id.*]. In

addition to those duties, a T7 employee provides "administrative and technical guidance" to clerks that are "assigned to retail and post office operations." [*Id.*].

Specifics aside for the 204B and T7 positions, Plaintiff alleged that "[d]uring the years [she] was performing the duties" "[t]here were no issues." [Doc. 1, p. 7]. According to her Complaint, there was a job posting for a supervisor position, and she applied for it. [*Id.* at pp. 2, 7]. During the application process, though, she alleged she "was told that because [her] niece worked at the same location[,] [she] could not be awarded the position." [*Id.* at p. 7]. Put simply, Plaintiff alleged that she "could not serve in that position because of nepotism"—because she would have to "manage a family member." [*Id.* at p. 2].

However, as the Court will explain more fully below, when a plaintiff cannot allege discriminatory intent based on a characteristic protected by federal law, a claim of "'nepotism' by itself is not actionable under a disparate treatment analysis." *Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 (11th Cir. 1990). Plaintiff's Complaint, when it comes to why she filed this lawsuit is clear. She said, "[d]uring the hiring process[,] [she] was [told] that [she] could not serve in that position because of nepotism." [Doc. 1, p. 2]. Recognizing this, the Postmaster General was keen to home in on the fact that "Plaintiff does not indicate in her Complaint that she is suing for age discrimination" and that she "similarly does not indicate any protected class into which she falls." [Doc. 8, p. 2 (first citing [Doc. 1, p. 4]; and then citing [Doc. 1, p. 6])]. To be

6

sure, Plaintiff only labels her discrimination claim as one of general disparate treatment on grounds that she didn't receive the sought-after promotion because she would act in a supervisory position over her niece. [Doc. 1, pp. 2, 6]. Seemingly, this perceived disparate treatment stems from Plaintiff's argument in her Response and an attached submission discussing other post office locations that allegedly have postal employees who supervise their relatives. [Doc. 11, p. 3]; *see, e.g.*, [Doc. 11-4, pp. 1, 4–5, 9]. Not only does this argument still omit any mention of a protected characteristic, but, as discussed at length above, Plaintiff cannot rely on any submission attached to her Response as a means to amend the factual allegations in her Complaint. *Rust*, 2012 WL 12873027, at *2 n.3. Courts can only look to the allegations from a plaintiff's complaint—nothing else—when ruling on a motion to dismiss. *See Keating*, 598 F.3d at 762.

## LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(1)

An action may proceed in federal court only if federal subject-matter jurisdiction exists. *See* Fed. R. Civ. P. 12(h)(3). To that end, Rule 12(b)(1) authorizes a court to dismiss claims for lack of subject-matter jurisdiction. "When a defendant properly challenges [subject-matter] jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts" and "no presumptive truthfulness attaches to a plaintiff's allegations." *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (per curiam) (citations omitted). "The existence of disputed material facts will not preclude

the trial court from evaluating for itself the merits of the jurisdictional issue." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)).

A Rule 12(b)(1) motion may be based upon either a facial or a factual challenge to the complaint. *Lawrence*, 919 F.2d at 1529 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). If a defendant raises a facial attack, the district court may only look to see if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, taking the facts alleged as true. *See id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). When the attack is factual, however, the existence of subject-matter jurisdiction is challenged, and a district court may consider matters outside of the pleadings—"free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In such an instance, the district court may dismiss based on the complaint—either alone or supplemented by undisputed facts—or its resolution of disputed facts, or both. *See McElmurray v. Consol. Gov't of Augusta– Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *Lawrence*, 919 F.2d at 1529 ("[T]he existence of [subject-matter] jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered," and "no presumptive truthfulness attaches to [a] plaintiff's allegations.") (citation omitted).

B.    **Federal Rules of Civil Procedure 12(b)(6)**

When ruling on a motion under Rule 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550

U.S. at 572. In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

However, through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft*, 556 U.S. at 678–79).

Now, whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted)

9

(alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56.

To decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.*

When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555). A plaintiff may use legal conclusions to structure a complaint, but they "must be supported by factual allegations." *Id.* (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in a complaint as true, they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting

*Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Finally, and in this case, critically, a complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up). To survive, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

### A.   Plaintiff's Complaint Fails to Establish Subject-Matter Jurisdiction

When the Court reviewed Plaintiff's Complaint, it, like the Postmaster General, noticed that she didn't indicate any federal statute that would give the Court subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 or 1343. *See, e.g.*, [Doc. 1, pp. 1–2]. She doesn't "check" the Title VII portion of her Complaint to assert a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. [*Id.* at p. 1]. Nor does she

check the portions for the Age Discrimination in Employment Act of 1967 ("ADEA"), codified at 29 U.S.C. § 621 and in subsequent sections, or the Americans with Disabilities Act of 1990 ("ADA"). [*Id.* at p. 2]; *see also* 42 U.S.C. § 12101 *et seq*. The only portion Plaintiff "checks" is the one labeled, "Other," and there she stated that her claim is "on the grounds of [d]isparate [t]reatment." [Doc. 1, p. 2]

In seeking dismissal, the Postmaster General argued that "disparate treatment" "is not an independent cause of action and does not provide . . . a jurisdictional basis for suit." [Doc. 8, p. 5]. The Postmaster General is correct. Since Plaintiff failed to delineate under which federal statute, or statutes, she brought her claim—under, for example, Title VII, the ADEA, or the ADA—she failed to affirmatively establish federal jurisdiction as she is required to do. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000) (citation omitted); *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). Accordingly, dismissal pursuant to Rule 12(b)(1) is the appropriate course of action. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1235 (11th Cir. 2008) (per curiam).

### B. Plaintiff's Complaint Fails to State a Claim

Assuming Plaintiff brings her claim under Title VII, that statutory provision makes it unlawful for a covered employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

2(a)(1). Thus, Plaintiff's claim based on nepotism isn't actionable under Title VII.

While nepotism-based employment decisions may seem unfair, they are not unlawful. Nepotism does not constitute actionable disparate treatment. *Platner*, 908 F.2d at 905; *McPhie v. Yeager*, 819 F. App'x 696, 699 (11th Cir. 2020) (reiterating that nepotism "does not amount to discrimination"); *Powell v. Am. Remediation & Env't, Inc.*, 618 F. App'x 974, 979 (11th Cir. 2015) (holding that a district court "correctly concluded that 'nepotism is not actionable under Title VII'") (alteration adopted); *Horne v. Turner Const. Co.*, 136 F. App'x 289, 293 (11th Cir. 2005) (noting that nepotism "is permitted under Title VII."). The same can be said for Plaintiff's nepotism-based claim had she brought it under the ADEA or the ADA. Neither of these laws prohibit discrimination based on nepotism alone.

Since Plaintiff could not allege that she wasn't promoted based on some protected characteristic—be it race, color, religion, sex, national origin, age, or disability—she failed to state a claim upon which relief can be granted. *See Andrews v. City of Hartford*, 700 F. App'x 924, 927 (11th Cir. 2017) (affirming dismissal of complaint where it did not sufficiently allege an adverse employment action on the basis of a protected characteristic); *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012) (upholding district court's dismissal of complaint where it contained no facts to support that a protected characteristic played any role in the alleged disparate treatment). Accordingly, the Court also dismisses Plaintiff's nepotism-based claim

against the Postmaster General under Rule 12(b)(6) as well for failure to state a claim.[1]

## **CONCLUSION**

As more fully discussed above, the Court **LIFTS** the **STAY**[2] imposed on this case by the Administrative Order Staying Civil Proceedings in Light of Lapse of Appropriations, and it **GRANTS** the Postmaster General's Motion to Dismiss. The

---

[1] At one point, the Postmaster General argues that Plaintiff's Complaint does not "provide sufficient facts to establish a *prima facie* case or a convincing mosaic of discrimination." [Doc. 8, p. 7]. While the Postmaster General seemingly understands that Plaintiff doesn't have to "allege facts [that] establish a *prima facie* case," because he argues just that, the Court wants to be clear that its ruling is not based on Plaintiff's failure to establish a *prima facie* case. *See* [*id.* at pp. 5–6]. Of course, as discussed above, Plaintiff needed to provide enough facts to plausibly suggest an entitlement to relief for discrimination based on "disparate treatment" because of a protected characteristic, *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679), but the law in the Eleventh Circuit is clear when it comes to disparate treatment in the employment context. It is well established that an employee doesn't have to plead a *prima facie* case in the complaint. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam); *Davis v. Mia.-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3 (11th Cir. Sept. 5, 2024). "The Supreme Court has held that an employment discrimination plaintiff need not plead specific facts establishing a *prima facie* case under the burden-shifting framework established in *McDonnell Douglas*." *Horace v. ARIA*, No. 23-12414, 2024 WL 1174398, at *4 (11th Cir. Mar. 19, 2024) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)). Thus, the fact that Plaintiff's Complaint may not "provide sufficient facts to establish a *prima facie* case or a convincing mosaic of discrimination" will not, cannot, and does not supply the basis for the Court's dismissal of her claim against the Postmaster General. *See Swierkiewicz*, 534 U.S. at 511 ("[The Supreme Court] has never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *see also* [Doc. 8, p. 7].

[2] As to the now-lifted stay and Plaintiff's ability to seek leave to amend her Complaint given the Court's without-prejudice denial of her Motion to Amend, the Court notes that Plaintiff made no further effort to do so. *See* Fed. R. Civ. P. 15(a)(2). The Court denied Plaintiff's Motion to Amend without prejudice on September 24, 2025, and she did not re-file any request to properly amend her Complaint consistent with the Court's underlying discussion in denying leave to amend. In any event, it appears that the sole basis for Plaintiff's claim is nepotism and is one without any allegations concerning a characteristic protected by federal law. As discussed above, nepotism by itself cannot sustain a disparate treatment claim. *Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 (11th Cir. 1990). So, any further request by Plaintiff to amend her Complaint to "reshape" what is a pure nepotism claim would be futile, and district courts need not allow an amendment where it would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, granting leave to assert amended factual allegations to support a claim based purely on nepotism wholly removed from any of the protected characteristics discussed above would prove futile. *See* [Doc. 11, p. 3 (Plaintiff's own argument that "the reason [she] was denied the [s]upervisor position" was just nepotism].

Court **DIRECTS** the Clerk of Court to **ENTER** Judgment in favor of the Postmaster General and **CLOSE** this case.

**SO ORDERED**, this 22nd day of October, 2025.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**